**Reversed and Remanded, In Part, and Affirmed, In Part, and Opinion filed August 13, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00840-CR
## NO. 14-14-00841-CR

---

## MONIKA LYN SAENZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Cause Nos. 70222 & 70223**

---

## O P I N I O N

In the early morning hours of March 9, 2013, appellant Monika Lyn Saenz struck and killed Jose Torres, Jr. with her truck. Appellant was convicted by a jury of intoxication manslaughter and accident involving injury or death. Because we conclude that the trial court's failure to include an application paragraph regarding appellant's concurrent causation defense in the jury charge was error, and because

it was also error for the trial court to exclude evidence of the decedent's toxicology report, we reverse appellant's conviction for intoxication manslaughter and remand for a new trial. We affirm appellant's conviction for accident involving injury or death.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Shortly after 3:00 a.m. on the morning of March 9, 2013, appellant was pulled over after an officer noticed that appellant's vehicle had substantial front-end damage and was driving without headlights. Several officers observed that appellant appeared to be intoxicated, and after several field sobriety tests also indicated appellant's intoxication, appellant was placed in custody for driving while intoxicated.

While appellant's traffic stop was taking place, another officer discovered the body of Jose Torres, Jr. not far from appellant's location. Evidence near Torres's body indicated that he was likely struck by appellant's truck. As a result, appellant was subsequently taken to a local emergency center for a blood draw pursuant to Texas Transportation Code section 724.012. Testing revealed that appellant's blood alcohol concentration was .172 at the time of the blood draw, which was conducted at least an hour after the accident.[1]

An autopsy was conducted of Torres, and a toxicology report revealed that, at the time of his death, Torres's blood alcohol concentration was also .172. The report also revealed that Torres had used marijuana and cocaine at some point prior to his death.

---

[1] Appellant's blood was later retested at the time of trial due to the discovery of a potential problem with the testing machine. The subsequent testing resulted in a blood alcohol concentration ranging from .150 to .166 between samples, likely due to the evaporation of ethanol in the blood between the time of the blood draw and the time of trial approximately 18 months later.

2

At trial, appellant sought to admit Torres's .172 blood alcohol concentration as supporting evidence that Torres's conduct was a concurrent cause sufficient to have caused his own death. The trial court excluded the evidence of Torres's blood alcohol concentration on the grounds that it was not relevant and that its probative value was substantially outweighed by the danger of unfair prejudice. Regardless, the charge submitted to the jury contained an abstract paragraph on concurrent causation, but did not apply the law of concurrent causation to the facts of the case.

After hearing the evidence, the jury found appellant guilty of intoxication manslaughter and accident involving injury or death,[2] and sentenced appellant to 20 years' and 10 years' confinement, respectively. The sentences were ordered to run concurrently. This appeal followed.

## II. DISCUSSION

On appeal, appellant presents five issues, contending: (1) the trial court erred in denying appellant's motion to suppress the results of her blood draw; (2) the trial court erred in excluding evidence of Torres's blood alcohol concentration; (3) the trial court erred by failing to provide an application paragraph in the jury charge on appellant's defense of concurrent causation; (4) the omission of the concurrent causation application paragraph caused appellant to suffer egregious harm; and (5) appellant was denied effective assistance of counsel. Because we find error was committed regarding appellant's related second and third issues, we need not reach the remaining issues.

---

[2] See Tex. Transp. Code Ann. §§ 550.021, 550.023 (West 2011), requiring the operator of a vehicle involved in an accident that results or is reasonably likely to result in injury or death to stop at the scene of the accident or return to the scene, remain at the scene, and render aid. An offense under this section involving the death of a person is a felony of the second degree. *Id.* § 550.021(c)(1)(A).

3

## A. Failure To Include Application Paragraph On Concurrent Causation

In her third point of error, appellant contends that the trial court erred by failing to apply the law of concurrent causation to the facts of the case in the court's charge to the jury for the offense of intoxication manslaughter. We address this issue first because its determination demonstrates, in part, the relevance of the excluded evidence addressed in appellant's second point of error.

### *Standard of Review and Applicable Law*

"It is well settled that an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence." *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). An abstract instruction is not sufficient; the law must be applied to the facts in the case. *Nugent v. State*, 749 S.W.2d 595, 598 (Tex. App.—Corpus Christi 1988, no pet.); *see also Barrera v. State*, 982 S.W.2d 415, 417 (Tex. Crim. App. 1998) (trial court erred by including abstract instruction on law of self-defense but failing to include application paragraph instructing jury to acquit if reasonable doubt existed on issue of self-defense).

An erroneous or incomplete jury charge jeopardizes a defendant's right to jury trial because it fails to properly guide the jury in its fact-finding function. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). However, an erroneous or incomplete jury charge does not result in an automatic reversal of a conviction. *Id.* When reviewing alleged charge error, we must first determine whether error actually exists in the charge, and if error exists we must determine whether the level of harm resulting from the error requires reversal. *Id.* at 731–32. If error exists and a timely objection was made at trial, we must determine whether the charge error resulted in "some harm" to appellant. *Id.* at 732; *see also Almanza*

4

*v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If the error is instead urged for the first time on appeal, we must determine whether the charge error resulted in "egregious harm" to appellant. *Abdnor*, 871 S.W.2d at 732; *Almanza*, 686 S.W.2d at 171.

### *Application*

The charge submitted to the jury in this case included an abstract instruction on concurrent causation that tracked the concurrent causation definition found in the Texas Penal Code. *See* Tex. Penal Code Ann. § 6.04(a). The jury charge did not, however, include an application paragraph applying the law of concurrent causation to the facts of the case.

During the charge conference, appellant did not request the inclusion of an application paragraph regarding concurrent causation in the jury charge. Instead, it was the State that requested the inclusion of a concurrent causation application paragraph; however, the trial court denied the inclusion of such language.

In its brief, the State concedes that any alleged error regarding the absence of an application paragraph on concurrent causation was preserved for appellate review.[3] Accordingly, because error was properly preserved, we will review any charge error to determine whether it caused appellant "some harm."[4] *See Abdnor*, 871 S.W.2d at 732–33; *Almanza*, 686 S.W.2d at 171.

---

[3] Even if the State had not conceded that the issue was preserved for our review, we would still conclude the issue was preserved, as the lack of a concurrent causation application paragraph was brought to the court's attention and was denied. To require appellant to also request the same instruction that had just been denied would require the performance of a useless act, which the law does not compel. *See Stewart v. State*, 13 S.W.3d 127, 131 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("We will not impose upon appellant the requirement to perform a useless act to preserve error."); *Hernandez v. State*, 663 S.W.2d 5, 8 (Tex. App.—El Paso 1983, pet. dism'd) ("[I]t is a settled principle of law that one is not penalized for the failure to perform a useless act.").

[4] Because we conclude that the error was preserved, we need not reach appellant's related

During trial, the jury heard certain evidence which might support appellant's concurrent causation defense, including: that Torres was wearing a black shirt and dark jeans, which "would have made him very difficult to detect in the roadway"; that there was no evidence indicating that appellant's vehicle left the roadway; that the highway shoulder was very narrow and dropped off into a ditch, leaving little room to walk on the shoulder; that Torres was likely somewhere between the shoulder line and the middle of the lane when he was struck; that Torres was walking on the wrong side of the road in violation of the Transportation Code[5]; that Torres was struck by appellant's truck in the center of, or close to the center of, the truck's grill; that appellant was not exceeding the speed limit at the time of the collision; and that Torres made more than ten phone calls in the time period after leaving the bar and immediately preceding his death, and may have been distracted as a result. Finally, the jury also heard expert testimony that "a dimly-clad pedestrian walking on a dimly lit stretch of road, such as this [road], in a 45 mile an hour speed limit zone, other drivers — sober drivers would have difficulty seeing that pedestrian, in my opinion, and taking effective evasive action in avoiding that," and that "many drivers would have had a very difficult time seeing Pedestrian Torres in the roadway at that time of night and have enough time to take effective evasive action."

Based on the foregoing, there was at least some evidence before the jury that appellant's intoxication did not necessarily cause the collision and Torres's resulting death. Equally important, the jury heard some testimony that it was

fourth issue contending that, should we determine the error was not preserved, the charge error nevertheless caused her "egregious harm." *See Almanza*, 686 S.W.2d at 171.

[5] See Tex. Transp. Code Ann. § 552.006(b) (West 2011), providing that if there is no sidewalk, "a pedestrian walking along and on a highway shall if possible walk on: (1) the left side of the roadway; or (2) the shoulder of the highway facing oncoming traffic."

essentially Torres's actions that caused his death, and that it would have been difficult for any driver, sober or intoxicated, to avoid hitting Torres.

Because the evidence, however "weak or strong, unimpeached or contradicted," raised the issue of concurrent causation, we hold that the trial court should have applied the law of concurrent causation to the facts in this case and charged the jury that if they found Torres's conduct clearly sufficient to cause the accident and appellant's conduct clearly insufficient, they should acquit appellant.[6] *See Granger*, 3 S.W.3d at 38; *Nugent*, 749 S.W.2d at 598 (concluding that trial court's failure to apply the law of concurrent causation to the facts of the case in the jury charge was reversible error).

Concluding that the trial court erred by not including the requested application paragraph on concurrent causation, we must determine whether the omission caused appellant "some harm." *See Abdnor*, 871 S.W.2d at 732–33; *Almanza*, 686 S.W.2d at 171. Here, there was no dispute that appellant hit Torres, and concurrent causation was appellant's only defense. Therefore, we cannot say that the omission of an application instruction on concurrent causation did not

---

[6] This case is distinguishable from other cases where it was determined that the appellant's actions alone were clearly sufficient to cause the accident, as here there was no evidence presented that any actions by appellant other than her intoxication resulted in Torres's death, and there was at least some evidence that Torres's actions alone were sufficient to cause his death by any driver. *See, e.g.*, *Hale v. State*, 194 S.W.3d 39, 43–44 (Tex. App.—Texarkana 2006, no pet.) ("The facts here do not allow a conclusion that Whatley's conduct, by itself, in stopping the vehicle on the roadway was clearly sufficient to cause the harm. Without the occurrence of Hale driving his vehicle while intoxicated, *at a high rate of speed*, Whatley's conduct would not have resulted in [his passenger's] death. . . . When the additional element of speed is added, the intoxication of a driver presents even more danger." (emphasis added)); *Westbrook v. State*, 697 S.W.2d 791, 793 (Tex. App.—Dallas 1985, pet. ref'd) (considering whether appellant was entitled to a concurrent causation application paragraph, the court of appeals concluded that "[i]f the jury had found that the collision was caused by the [decedent's] car's change of lanes, that fact would not have established that the collision was not also caused concurrently by appellant's driving *at a high rate of speed, his own change of lanes*, or his driving while intoxicated . . . ." (emphasis added)).

cause appellant at least some harm. *See, e.g.*, *Louis v. State*, 329 S.W.3d 260, 273 (Tex. App.—Texarkana 2010), *aff'd*, 393 S.W.3d 246, 254–55 (Tex. Crim. App. 2012) ("[W]e cannot say that the charge errors here did not cause some harm to Louis. . . . The jury was effectively denied the opportunity to consider Louis' most potent defense—that he did not know the degree of injury he was inflicting. While this defense may not seem reasonable to us, resolution of that reasonableness is a matter for the jury."). Accordingly, we sustain appellant's third point of error.

Our decision on appellant's third issue is, by itself, sufficient to reverse and remand for a new trial for the offense of intoxication manslaughter. However, because we also conclude that appellant's second issue should be sustained, we address that issue below in order to avoid additional error on remand.

## B.  Exclusion Of Decedent's Blood Alcohol Concentration

In her second point of error, appellant challenges the trial court's exclusion of Torres's blood alcohol concentration in relation to the charge of intoxication manslaughter.

### *Standard of Review and Applicable Law*

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Tex. R. Evid. 403. However, "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g).

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm the trial court's decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

If we determine the trial court's exclusion of evidence to be an abuse of discretion, then we must determine whether that error was harmful. *See* Tex. R. App. P. 44.2. The erroneous exclusion of evidence generally constitutes non-constitutional error and is reviewed under Texas Rule of Appellate Procedure 44.2(b). *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007). However, the improper exclusion of evidence may raise a constitutional violation if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense. *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002); *see also Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002) (erroneous exclusion of evidence is a constitutional violation if it "effectively prevents the defendant from presenting his defensive theory," or in other words, if the ruling "goes to the heart of the defense"). In that case, the more stringent standard in Rule 44.2(a) is applied, and we will review the entire record and must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a); *Simpson v. State*, 119 S.W.3d 262, 269 n.5 (Tex. Crim. App. 2003).

In this case, the claimed error involves the exclusion of certain evidence which might support a defense of concurrent causation. The Texas Penal Code provides that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, *unless the concurrent cause was clearly sufficient to produce the result and*

9

*the conduct of the actor clearly insufficient*." Tex. Penal Code Ann. § 6.04(a) (West 2011) (emphasis added to show defensive language).

### *Application*

At trial, appellant did not attempt to argue that she did not cause Torres's death. Instead, appellant's entire attempted defense was that Torres's actions constituted a concurrent cause clearly sufficient to produce his death, and that appellant's actions were clearly insufficient to produce Torres's death. As discussed in more detail above, appellant's attempted defense was essentially that Torres's actions of walking in the roadway while intoxicated were by themselves sufficient to cause his death, while appellant's action of driving *while intoxicated* was, by itself, insufficient to cause Torres's death, on the grounds that even a sober driver would have struck and killed appellant.[7] We view appellant as arguing that Torres was committing the offense of public intoxication at the time of his death.[8]

Accordingly, appellant sought to admit Torres's .172 blood alcohol concentration as evidence that Torres's conduct was a concurrent cause sufficient to have caused his own death. The trial court excluded the toxicology report, but allowed appellant to make an offer of proof outside the presence of the jury. To make the offer, appellant's counsel questioned Dr. Nobby Mambo, the Deputy Medical Examiner of Galveston County,[9] who conducted the autopsy on Torres and who reviewed the toxicology results.

---

[7] Appellant was charged with, and convicted of, intoxication manslaughter. A person commits the offense of intoxication manslaughter if they: (1) operate a motor vehicle in a public place; and (2) are intoxicated, and "**by reason of that intoxication**" cause the death of another by accident or mistake. Tex. Penal Code Ann. § 49.08 (West 2011) (emphasis added).

[8] *See* Tex. Penal Code Ann. § 49.02(a) (West 2011) ("A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another.").

[9] Dr. Mambo performed the autopsy for Brazoria County, as Brazoria County does not

10

Dr. Mambo confirmed that Torres's blood alcohol concentration was .172 at the time of his death, and that such a blood alcohol concentration was twice the legal limit for driving in Texas. Dr. Mambo agreed that Torres was not sober, and that he was intoxicated pursuant to the penal code definition of intoxication involving a blood alcohol concentration of more than 0.08.[10] Dr. Mambo refused, however, to opine that Torres's .172 blood alcohol concentration would have affected the normal use of Torres's mental or physical faculties.

After questioning Dr. Mambo, appellant reoffered the toxicology report. However, because of Dr. Mambo's refusal to opine that Torres's alcohol consumption may have affected the normal use of his mental or physical faculties, the trial court denied the offer, concluding that in order for the trial court "to allow [appellant's] offer, there must be a showing that [Dr. Mambo] can say that." The trial court noted that, had Dr. Mambo made that connection—that Torres's .172 blood alcohol concentration may have affected the normal use of his mental or physical faculties—then the toxicology report would "certainly [be] relevant."

Initially, we question Dr. Mambo's refusal to concede that Torres's intoxication of more than twice the legal limit for driving *may* have affected Torres's normal use of his mental or physical faculties. If a blood alcohol concentration of .172 is substantially more than sufficient to find a driver is a danger to society and convict them of driving while intoxicated, then it is difficult to envision how that same blood alcohol concentration would not affect a person's

---

have a medical examiner's office.

[10] See Tex. Penal Code Ann. § 49.01(2) (West 2011), defining "Intoxicated" as either (a) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (b) having an alcohol concentration of 0.08 or more.

normal use of their mental or physical faculties to the degree that person would be a danger to himself or others.

Regardless, in order to present her defense based on Torres's alleged public intoxication appellant was not required to show both that Torres had a blood alcohol concentration of 0.08 or greater *and* that Torres did not have the normal use of his mental or physical faculties, as the trial court concluded.[11]  Rather, the standard for public intoxication is whether the person committing the offense is in a public place and is "intoxicated to the degree that the person may endanger the person or another."  *See* Tex. Penal Code Ann. § 49.02(a).  The trial court should have allowed appellant to introduce evidence of Torres's blood alcohol concentration of more than twice the legal driving limit, from which the jury may have concluded that Torres was a danger to himself or others while walking in the middle of a road during the early morning hours.

Moreover, the evidence that appellant sought to admit regarding Torres's intoxication was relevant in that it may have provided a possible explanation to the jury for Torres's actions of being in the roadway in the middle of the night and failing to move from the roadway when a vehicle approached.  *See* Tex. R. Evid. 401.  Additionally, as we previously concluded that appellant was entitled to an application paragraph on concurrent causation, this evidence of Torres's blood alcohol concentration would be relevant to the jury's consideration of that defense.[12]  Because the evidence was relevant, the trial court was directed under

---

[11] Even as applied to a claim of driving while intoxicated, the trial court's standard is still incorrect.  The statute only requires proof of a blood alcohol concentration of 0.08 or greater *or* not having the normal use of mental or physical faculties by reason of the introduction of alcohol.  *See* Tex. Penal Code Ann. § 49.01(2).

[12] *Cf. Frohwein v. State*, No. 08–03–00488–CR, 2005 WL 1413210, at *8 (Tex. App.— El Paso June 16, 2005, pet. ref'd) (not designated for publication) (toxicology report showing that decedent had used cocaine was held properly excluded where the evidence revealed that

the Texas Rules of Evidence to admit such evidence "unless the probative value of that evidence is *substantially* outweighed by the danger of unfair prejudice . . . ." *See Montgomery*, 810 S.W.2d at 389 (emphasis in original); *see also* Tex. R. Evid. 403. With a proper concurrent causation paragraph in the jury charge, evidence of Torres's intoxication would not have confused the issues or misled the jury. Accordingly, we conclude that evidence of Torres's intoxication was relevant and that the probative value of the evidence outweighed any reason for its exclusion. Therefore, we hold that the trial court abused its discretion by excluding such evidence.

Having determined that the trial court's ruling was error, we must consider whether the error was harmful. *See* Tex. R. App. P. 44.2. A review of the record indicates that appellant's sole available defense was that Torres's actions were clearly sufficient to cause his death, while appellant's actions were clearly insufficient. Torres's intoxication of more than twice the legal limit went to the heart of that defense.[13] *See Wiley*, 74 S.W.3d at 405. The exclusion of such evidence effectively denied appellant the ability to present her defense of concurrent causation—a statutory defense provided by the legislature—and was therefore harmful. *See Johnson v. State*, 939 S.W.2d 230, 232 (Tex. App.—Waco 1997, pet. ref'd) ("We determined that the court erred in failing to allow relevant evidence of prior sexual activity of the prosecutrix, then determined that the error had harmed Johnson because the erroneous ruling denied him evidence of a statutory defense provided by the legislature."); *see also* Tex. Penal Code Ann.

---

defendant veered from his lane of travel into oncoming traffic and collided head-on with decedent's motorcycle, and decedent was traveling properly in his lane and attempted to avoid the collision by moving to the edge of the roadway).

[13] We reject the State's contention that appellant was able to adequately present Torres's intoxication through testimony that Torres shared several buckets of beer with two other people.

§ 6.04(a). Accordingly, we conclude that the exclusion of that evidence amounted to constitutional error.

Finally, after reviewing the entire record, we cannot say beyond a reasonable doubt that such error did not contribute to appellant's conviction or punishment. Because the jury heard some evidence that appellant's intoxication may not, on its own, have caused Torres's death, the fact of Torres's intoxication was a missing piece of evidence that may have affected the jury's ability to weigh appellant's concurrent causation defense.

### III. Conclusion

Because we conclude that the trial court erred by not including an application paragraph on appellant's concurrent causation defense, and because we conclude that the trial court's exclusion of the decedent's blood alcohol concentration was error, we reverse appellant's conviction for intoxication manslaughter and remand for a new trial. We affirm appellant's conviction for accident involving injury or death.

/s/    Marc W. Brown
Justice

Panel consists of Justices Christopher, Brown, and Wise.
Publish — Tex. R. App. P. 47.2(b).

14